### ROYDEN MARBLE MACHINERY CO. v. DAVIS.

(Circuit Court, E. D. Pennsylvania. May 19, 1911.)

#### No. 53.

PATENTS (§ 328*)—NOVELTY—MACHINE AND PROCESS FOR CUTTING STONE.

The Pierce patents, No. 876,087, for a stone cutting apparatus, consisting essentially of a cutting wheel of agglomerated carborundum, of dished shape, and No. 914,303, for a process of dividing marble slabs by means of a similar wheel, are both void for lack of patentable novelty in view of the prior art.

In Equity. Suit by the Royden Marble Machinery Company against Frank L. Davis. On final hearing. Decree for defendant.

D. Anthony Usina, for complainant.

Edward S. Beach, Clarence D. Kerr, and Walter C. Flanders, for defendant.

J. B. McPHERSON, District Judge. This litigation concerns two patents issued to John Royden Pierce—a machine patent, No. 876,087, granted in January, 1908, on an application filed May 17, 1905, and a process patent, No. 914,303, granted March 2, 1909, on an application filed June 13, 1907. This suit was brought in April, 1908, and was originally based on No. 876,087 and on No. 858,466, but the latter

patent was afterwards withdrawn, and No. 914,303 was added by supplemental bill. The earlier of the patents now in dispute refers to the use of carborundum wheels in the art of cutting stone, especially (as the specification says) "the cutting of marble or similar hard stone"; and the process patent is definitely restricted to the "coping" of marble slabs, by which is meant the dividing of comparatively thin slabs into pieces of smaller area. The first four claims of the machine patent, which will be called the dished-wheel patent, are those relied upon. They are essentially alike, and present for consideration a specially constructed wheel:

"1. A stone-cutting apparatus including a cutting wheel molded integrally from center to periphery of agglomerated carborundum, and having its periphery of greater thickness than its sides.

"2. A stone-cutting apparatus including a cutting wheel, A, molded integrally from center to periphery of agglomerated carborundum, having a peripheral face, D, and side faces, E, tapering from the peripheral face to the central portion.

"3. A stone-cutting apparatus including a cutting wheel, A, molded integrally from center to periphery of agglomerated carborundum, having a peripheral face, D, a flat-sided central portion F, and side faces E tapering from the peripheral face to the central portion.

"4. A stone-cutting apparatus including a cutting wheel molded integrally from center to periphery of agglomerated carborundum, and having its periphery of greater thickness than its sides, in combination with means for directing jets of water upon the edges of the periphery."

The characteristics of this wheel are these: (a) The material of the wheel is partly carborundum and partly any agglomerating material to hold the particles of carborundum in place; (b) the wheel is a molded integral whole; (c) it is dished—that is, its periphery is thicker than its sides.

The process patent contains six claims; the first three are as follows:

"1. The process of dividing a marble slab, which consists in cutting through it with a wheel of carborundum rotating rapidly with slight pressure, said wheel having a diameter of approximately twelve inches, and being agglomerated with such a firm vitrified bond that the sharp particles cut like fixed teeth, and the bond being so hard and strong that notwithstanding the thinness of the wheel it cannot be substantially deflected by the oblique irregularities of the marble while operating with a rapid feed, said wheel being approximately five-sixteenths of an inch thick at its edge and. having its side faces dished.

"2. The process of dividing a marble slab, which consists in cutting through it with a rapidly rotating wheel of carborundum, said wheel having a maximum thickness of not more than approximately half an inch and being agglomerated with such a firm bond that the sharp particles cut like fixed teeth, and the bond being so hard and strong that notwithstanding the thinness of the wheel it cannot be substantially deflected by the oblique irregularities of the marble while operating with a rapid feed.

"3. The process of dividing a marble slab, which consists in cutting through it with a rapidly revolving thin wheel composed of carborundum agglomerated with such a firm bond that the sharp particles cut like fixed teeth, and the bond being so hard and strong that the wheel notwithstanding its thinness, cannot be substantially deflected by the oblique irregularities of the marble while operating with a rapid feed."

In all these claims the bond must be firm, or hard and strong (one claim calls for it as vitrified), so that the sharp particles of the carbo-

rundum shall cut like fixed teeth, and so that the wheel shall not be substantially deflected by the oblique irregularities of the marble while the cutting proceeds with a rapid feed. The wheel also must be thin—approximately one-half inch—although it may be more or less within the limits of thinness; and its diameter may be approximately 12 inches, or of any other length greater or less within the limits referred to in the specification. And the wheel must rotate or revolve rapidly, although the pressure between the wheel and the slab may be either slight, or of any other degree. The remaining claims explain how the process is to be carried out:

"4. An apparatus for dividing a marble slab, including a wheel composed of carborundum, and means for rotating it rapidly with slight pressure and for moving it through the slab, said wheel having a diameter of approximately twelve inches, and being agglomerated with such a firm vitrified bond that the sharp particles cut like fixed teeth, and the bond being so hard and strong that the wheel, notwithstanding its thinness, cannot be substantially deflected by the oblique irregularities of the marble while operating with a rapid feed, said wheel being approximately five sixteenths of an inch thick at its edge and having its side faces dished.

"5. An apparatus for dividing a marble slab, including a wheel composed of carborundum, and means for rotating it rapidly and for moving it through the slab, said wheel having a maximum thickness of approximately half an inch, and being agglomerated with such a firm bond that the sharp particles cut like fixed teeth, the bond being so hard and strong that notwithstanding the thinness of the wheel, it cannot be substantially deflected by the oblique irregularities of the marble while operating with a rapid feed.

"6. An apparatus for dividing a marble slab, including a thin wheel composed of carborundum, and means for rotating it rapidly and for moving it through the slab, the carborundum being agglomerated with such a firm bond that the sharp particles cut like fixed teeth, the bond being so hard and strong that the wheel, notwithstanding its thinness, cannot be substantially deflected by the oblique irregularities of the marble while rotating with a rapid feed."

As no apparatus or means is specifically described, it is evident that the last three claims are like the first three in laying the essential stress on the wheel. In a word, both patents center about this particular feature, and may be considered together in examining the prior art.

It is clear that the art before Pierce is full of devices for cutting stone, and some are of great antiquity. The use of sand, shot, and other loose abradants, either by hand or by machinery, is too familiar to need a reference. But in more recent times new substances of great hardness and abrading power have come into common use, and it is with some of these that we are especially concerned. Dr. Acheson's invention of carborundum goes back to the early 90's, and since that date this abradant has been turned to many uses. Wheels for abrading were well known for years before Pierce applied for his patents, and dished wheels were also old in this and in other arts. Moreover, wheels of abrading substances must ordinarily have a bond, and it is obvious that, the harder and firmer the bond, the more durable and effective will be the wheel. It is admitted also that wheels composed of agglomerated carborundum and molded into shape were old and well known. And, as already stated, dished wheels in various arts have been common property for a long time; two reasons in favor of this shape being (1) the diminution of friction and of consequent

loss of power during the operation of the tool, and (2) the diminished likelihood of breaking the tool if it can move more freely in the cut. Even if we lay aside the evidence concerning prior wheels molded integrally of carborundum, it cannot be denied that dished wheels employing other abrading substances, or employing carborundum in part, were well known before the date of these patents, and I cannot admit the validity of the argument which claims a practically fundamental position for these patents in the stone cutting art. In view of the admissions on this subject, I do not think it necessary to discuss the prior art in detail. Apparently, what happened was this: The inventor probably acquired a good deal of his knowledge about the valuable abrading properties of a carborundum wheel by independent investigation and experiment, and supposed he had made a discovery of the first importance, while in fact he was only one among a crowd of inventors who had long been occupied with the problem, and the labors of his predecessors had left little if anything for him. I do not think either patent can be sustained. The earliest date that can be assigned to the practice of the invention is the middle of 1904—probably in July—and before that date the prior art contains patents to Walters, Poole, Maloy, Hyde, Theil, Jackson, Henderson, Hergenhahn, Blanpain & Jaspart, and Offenbacher—to mention no others—which among them contain the essentials of both patents. As it seems to me, the dished wheel patent is certainly not valid, and even if the disclosures of the method patent were more definite than they are, I do not think that patentable novelty in the use of such a wheel has been established.

I may add that it would have been much less difficult to understand this dispute if the rule of the circuit court had been followed, and if both parties had presented clear and definite statements of the essential facts that in their opinion were established by the evidence. Argument is of course essential and always helpful, but it is not a substitute for such statements; they are intended to assist the court by presenting definitely the questions of fact (not the evidence of the facts) upon which the parties may agree or differ. It is not always easy to disinter the precise points in dispute from a voluminous record with which counsel are much more familiar than the court can be.

A decree may be entered dismissing the bill, with costs.